**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SUKHWINDER SINGH; DHARAM
SINGH,
            *Plaintiffs-Appellants,*

                v.

HILLARY RODHAM CLINTON,
Secretary of State; JANET
NAPOLITANO, Secretary, Department
of Homeland Security;
DEPARTMENT OF HOMELAND
SECURITY; LYNNE SKEIRIK, Director,
National Visa Center; MICHAEL S.
OWEN, U.S. Consul, U.S. Embassy,
New Delhi, India,
            *Defendants-Appellees.*

No. 09-15672

D.C. No.
4:08-cv-02362-
WDB

OPINION

Appeal from the United States District Court
for the Northern District of California
Wayne D. Brazil, Magistrate Judge, Presiding

Argued and Submitted
June 16, 2010—San Francisco, California

Filed August 20, 2010

Before: Kenneth F. Ripple,* Pamela Ann Rymer and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

*The Honorable Kenneth F. Ripple, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

12277

**COUNSEL**

Robert B. Jobe (argued), Sara E. Coppin and Sarah B. Castello, San Francisco, California, for the plaintiffs-appellants.

Tony West, Assistant Attorney General, David J. Kline, Director, District Court Section, Office of Immigration Litigation, Victor M. Lawrence, Principal Assistant Director, Christopher W. Hollis and Melanie Keiper (argued), Trial Attorneys, Washington, D.C., for the defendants-appellees.

**OPINION**

FISHER, Circuit Judge:

This appeal concerns the notice required by statute before the State Department could terminate an immigrant visa registration for failure to file a timely application. Sukhwinder and Dharam Singh (collectively "the Singhs") challenge the termi-

nation of Sukhwinder's visa registration. The State Department terminated Sukhwinder's visa registration for failure to apply within one year of notice of eligibility, but the Singhs contend that the indirect notice provided was inadequate under section 203(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(g). Because section 203(g) requires notice "to the alien," we reverse and remand for the district court to set aside the visa termination.

# I.

## A.

Sukhwinder Singh is a native and citizen of India. His brother Dharam Singh is a native of India who became a United States citizen in 1987. In 1988, Dharam filed a petition with the then-Immigration and Nationalization Service to establish that Sukhwinder was his brother and to begin the process of establishing Sukhwinder's eligibility for an immigrant visa. This filing is known as an I-130 petition or, simply, an I-130. *See* 8 C.F.R. § 204.1(a)(1). In 1991, Dharam retained attorney Gordon Quan to assist with the I-130 petition, which the government soon thereafter approved. After nearly a decade, Dharam contacted Quan in September 2000 to request an update concerning the petition. Quan sent a letter to Sukhwinder's address in India to inform him that the Visa Bulletin — a publication of the State Department Bureau of Consular Affairs that lists immigrant visa eligibility according to the date of the approved I-130, country of origin and relationship with the citizen-sponsor — had not yet reached the priority date of Dharam's petition and that the U.S. Embassy would not contact Sukhwinder until he was eligible to apply for his immigrant visa.

On September 4, 2000, the National Visa Center ("NVC") mailed an instructional packet to Quan at his office address listed on the 1991 I-130 petition. Quan's records do not indicate that he received the packet or any subsequent mailing

concerning Dharam's I-130 petition. On September 14, 2000, the NVC sent Sukhwinder's immigrant visa petition to the U.S. Embassy in New Dehli, India. The next month, the government sent correspondence to Dharam, although the parties dispute whether it was a visa application packet or merely notice that Sukhwinder's case had been forwarded to the Embassy in New Dehli.

In 2001, 2002 and 2003, the U.S. Embassy sent follow-up materials to Quan's 1991 address, back in the United States. Then on September 9, 2004, the State Department terminated Sukhwinder's visa registration and destroyed related records, based on Sukhwinder's failure to apply. Throughout the process, State Department records showed Sukhwinder's address as Village Paddabet, P.O. Dhaliwa, Dist. Kapurthala, Punjab, India, but there is no evidence that the U.S. Embassy, the NVC or any other agency sent correspondence to that address.

While these events were transpiring, Sukhwinder had left India on November 27, 1991 for the United States and petitioned for asylum, although his wife and children have continued to live at the address listed on the I-130 petition. The U.S. government placed Sukhwinder in removal proceedings in September 1994, and in February 2005 he applied for an adjustment of status to become a permanent resident. However, the government denied his request because his visa registration had been terminated in 2004. As of June 2010, removal proceedings against Sukhwinder were still ongoing.

**B.**

After the government denied Sukhwinder's application for adjustment of status, the Singhs commenced this collateral litigation under the Administrative Procedure Act ("APA"), seeking reinstatement of the approved I-130 petition. The government answered, and the parties engaged in limited discovery before cross-moving for summary judgment. In an opinion and order, the district court granted the government

summary judgment. The court first found that the doctrine of consular nonreviewability did not deprive it of subject matter jurisdiction, because the Singhs challenged the authority of the Department of State, rather than an exercise of its discretion. The court then concluded that section 203(g) of the INA, which mandates termination of immigrant visa registration "one year following notification to the alien," merely directs "the agency to select means that were reasonably calculated, in the circumstances, to achieve the statutorily mandated goal of notifying the alien." The court reviewed the termination of Sukhwinder's visa registration under the arbitrary and capricious standard of the APA and found that no trier of fact addressing the undisputed evidence could "rationally conclude that the agency did not have a rational basis for believing that the method that it chose to notify [Sukhwinder] Singh (by sending the notices to attorney Quan) was reasonably calculated to get the message to the [visa] applicant."

## C.

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1361 and entered judgment in March 2009, which the Singhs timely appealed. We have jurisdiction under 28 U.S.C. § 1291. On appeal, the government has correctly abandoned its argument that consular nonreviewability places this suit outside the subject matter jurisdiction of the federal courts. *See Patel v. Reno*, 134 F.3d 929, 932-33 (9th Cir. 1997) ("[W]hen the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.").

"We review the district court's grant of summary judgment as well as its statutory interpretations de novo." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010). "We must determine whether, viewing the evidence in the light most favorable to . . . the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* Under the APA, a

"reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Whether agency action is "not in accordance with law" is a question of statutory interpretation, rather than an assessment of reasonableness in the instant case. *See Nw. Envtl. Advocates v. U.S. Envtl. Prot. Agency*, 537 F.3d 1006, 1014 (9th Cir. 2008) (citing *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002)); *Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007); *see also Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 129 S. Ct. 2458, 2469-70 (2009) (addressing "statutory text . . . , the agencies' regulations construing it, and the EPA's subsequent interpretation of those regulations" rather than mere reasonableness).

## II.

**[1]** As an initial matter, the government suggests that this case may be moot because Sukhwinder cannot successfully adjust his status as a result of his unlawful entry in 1991. Although 8 U.S.C. § 1255(a) permits only individuals "inspected and admitted" to adjust to permanent resident status, the beneficiary of an I-130 petition filed on or before April 30, 2001 may be excepted from that rule after paying a $1,000 penalty. *See* 8 U.S.C. § 1255(i). Sukhwinder is also not required to leave the United States to apply for a visa in India, subjecting himself to the 10-year reentry bar based on an extended unlawful presence, *see id.* § 1182(a)(9)(B)(i)(II), because an individual who entered the United States without inspection need not return to his or her country of origin in order to apply for adjustment of status. *See id.* § 1255(i)(1).

## III.

"Qualified immigrants who are the brothers or sisters of citizens of the United States" may be allocated immigrant visas according to a yearly quota system. 8 U.S.C. § 1153(a)(4).

Subject to certain exceptions not present here, "any citizen of the United States claiming that an alien is entitled to classification by reason of a relationship described in [§ 1153(a)(4)] may file a petition with the Attorney General for such classification." *Id.* § 1154(a)(1)(A)(i). The Attorney General first investigates the alien beneficiary and then conveys approved petitions to the Department of State. *See id.* § 1154(b). The Secretary of State must then authorize a consular officer to grant preference status to the beneficiary. *See id.* Within each country of origin and preference category, the State Department then issues visas "to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General." 8 U.S.C. § 1153(e)(1); *see also* 8 C.F.R. § 245.1(g)(1) (permitting an I-130 beneficiary with approved preference status to apply when he or she "has a priority date on the waiting list which is earlier than the date shown in the [Visa] Bulletin" for the alien's country of origin and preference category).

## A.

Specific procedures for implementing statutes and regulations governing immigrant visas are set out in Chapter 42 of the Foreign Affairs Manual ("FAM"). Under FAM provisions operative in 2000, when the Department of State attempted to notify Sukhwinder of his visa eligibility, "all immigrant visa petitions approved by the Immigration and Naturalization Service in the United States" were next "sent to the [NVC]." 9 FAM § 42.63 proc. n.4.1(a) (2000); *cf.* 9 FAM § 42.63 proc. n.2(a) (2010) (similar procedure following approval by Department of Homeland Security). The NVC would then "send beneficiaries" of I-130 petitions who were not yet eligible to petition for an immigrant visa a "Packet 3(a)." 9 FAM § 42.63 proc. n.4.1(b) (2000); *cf.* 9 FAM § 42.63 proc. n.5.2(a) (2010) (requiring the NVC to "send the 'Notice of Registration as Intending Immigrant' " letter confirming receipt of the petition at NVC and notifying the beneficiary of

his or her priority date).[1] The 2000 FAM also required the NVC, or an embassy or consulate to which the NVC had sent a visa applicant's file, to "send Packet 3 to an alien formerly sent Packet 3(a) when the [a]pplicant's priority date reache[d] the qualifying date established by the [State] Department." 9 FAM § 42.63 proc n.5.1-4(1) (2000); *see also* 9 FAM § 42.63 proc. n.5.1 (2000) (emphasizing the "importance of promptly mailing Packet 3 to applicants entitled to immigrant status whose priority dates are within the qualifying dates established by the Department"); *cf.* 9 FAM § 42.63 proc. n.5(b) (2010) (same, but replacing "Packet 3" with "instruction packet for immigrant visa applicants").

It is not certain whether the 2000 FAM directed notice to be sent directly to the beneficiary in all cases. The I-130 petition form in use when Dharam filed a petition to benefit Sukhwinder required an address for the alien beneficiary. *See* Form I-130, 2/28/87 Revision; *see also* Form I-130 5/27/08 Revision (current form also requiring beneficiary's address). Under both past and present editions of the FAM, a visa applicant, such as an I-130 beneficiary, bears the burden of maintaining a current address on file with the Department of State. *See* 9 FAM § 42.83 n.5 (2000); 9 FAM § 42.83 n.5 (2010). However, with regard to packets containing either application materials or notice of a priority date, the 2000 FAM stated, "When a case has legal representation in the United States, NVC will send the Packet to the lawyer." 9 FAM § 42.63 proc. n. 4.1(b) (2000). On the other hand, the 2000 FAM did not clarify whether packets mailed to an attorney supplemented or supplanted direct notice to the I-130 beneficiary described in all other relevant provisions of the FAM. Since

---

[1]*See generally* 9 FAM § 42.41 proc. n.1.1 (2000) (requiring the NVC to send the alien beneficiary either a Packet 3(a) or a Packet 3, which provides instructions for an immediate visa application, upon receipt of an approved I-130 petition); 9 FAM § 42.41 proc n.1.1 (2010) (same, despite elimination of packet system); 9 FAM § 42.41 n.3.5 (2000) ("[T]he consular [official] shall notify the beneficiary of the receipt and disposition of the petition."); 9 FAM § 42.41 n.13.2-3 (2010) (same).

that time, the State Department has revised the FAM to require I-130 beneficiaries to designate an agent for receipt of notice and application materials or to affirmatively decline to utilize an agent. *See* 9 FAM § 42.63 proc. n.3.1 (2010).

**B.**

**[2]** Any alien who is eligible for an immigrant visa must file a Form DS-230 to start the application process. *See* 22 C.F.R. § 42.63(a). An alien's failure to act upon notice of visa eligibility has grave consequences. INA section 203(g) mandates:

> The Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following *notification to the alien* of the availability of such visa, but the Secretary shall reinstate the registration of any such alien who establishes within 2 years following the date of notification of the availability of such visa that such failure to apply was due to circumstances beyond the alien's control.

8 U.S.C. § 1153(g) (emphasis added); *see also* 8 C.F.R. § 205.1(a)(1) (clarifying that termination is automatic). Similarly, a regulation establishes that the registration period begins "for the purposes of INA . . . [section] 203(g) upon the filing of Form DS-230, when duly executed, or the *transmission* by the Department *to the alien* of a notification of the availability of an immigrant visa, whichever occurs first." 22 C.F.R. § 42.67(b) (emphasis added). Another governing regulation more loosely states that "an alien's registration for an immigrant visa shall be terminated if, within one year after transmission of a notification of the availability of an immigrant visa, the applicant fails to apply for an immigrant visa," without specifying to whom the notification must be transmitted. *Id.* § 42.83(a) (emphasis added).

**IV.**

The State Department concedes that it did not send notice to Sukhwinder Singh's Indian village address listed on the I-130 petition as his current address. Rather, it sent application packets to attorney Quan's 1991 address, as well as some form of notice to Sukhwinder's brother, Dharam. The government argues that the absence of restrictive provisions in the INA and its implementing regulations provide the discretion to terminate visa registration after notice of eligibility through any channel reasonably calculated to reach an I-130 beneficiary. However, the field is not nearly so free of regulation. An agency "has no discretion to make a decision that is contrary to law." *Hernandez v. Ashcroft*, 345 F.3d 824, 846 (9th Cir. 2003).

When interpreting statutes and regulations within an agency's area of expertise, we must first establish the degree of deference accorded to the agency's construction of these provisions.

> To determine whether an agency's interpretation of its own regulation is accorded deference, this court conducts a two-step inquiry. First, deference is warranted only when the language of the regulation is ambiguous; otherwise, "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." Second, if the regulation is ambiguous, then the agency's interpretation of it is controlling unless plainly erroneous or inconsistent with the regulation.

*Casares-Castellon v. Holder*, 603 F.3d 1111, 1112-13 (9th Cir. 2010) (quoting *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)). Even in the presence of ambiguity, however, we do not apply controlling deference to an agency decision lacking precedential value. *See Garcia-Quintero v.*

*Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006). In such cases "the agency's determination is due only respect based on the persuasiveness of the decision." *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 648 (9th Cir. 2004) (internal quotation marks and citation omitted).

## A.

**[3]** The statutory language forecloses termination premised on notice to the I-130 petitioner rather than the beneficiary. As noted above, INA section 203(g) specifies that "notification to the alien" is a prerequisite to termination, and an implementing regulation also requires "the transmission by the Department to the alien of a notification." 22 C.F.R. § 42.67(b). An I-130 *petitioner* must be a United States citizen, rather than an alien, much less "the" alien. *See* 8 U.S.C. § 1154(a)(1)(A)(i). In the I-130 process, "the alien" will always be the petition's *beneficiary*. Moreover, it is the beneficiary, rather than the petitioner, who must file a DS-230 to stave off termination. Therefore, any notice sent by the State Department to Dharam Singh advising that Sukhwinder was eligible to apply for an immigrant visa was an insufficient foundation for termination of registration under INA section 203(g).

## B.

**[4]** The more difficult question is whether notice sent to an attorney who assisted in the preparation of an I-130 petition may constitute "notification to the alien" or "transmission by the Department to the alien of a notification." Although the INA and regulations are silent on the matter, standard agency principles suggest that notice to the alien's formally designated agent would suffice. *Cf. United States v. Johnson*, 196 F.3d 1000, 1002-03 (9th Cir. 1999) (holding that a statute requiring delivery of a speedy trial demand "to the prosecuting officer" could be satisfied through delivery to the entity formally designated by the U.S. Attorney on the relevant

form). On the other hand, in at least one instance where Congress intended to permit notice either to an alien or to counsel, without express election of an agent, it did so explicitly. *See* 8 U.S.C. § 1229a(a)(5)(A) (permitting notice "to the alien or the alien's counsel of record"). We therefore hold that section 203(g) of the INA and an implementing regulation, 22 C.F.R. § 42.67(b), unambiguously require that the State Department send notice to the alien or effectively to the alien, *i.e.*, to an expressly designated agent, prior to termination under INA section 203(g).

**[5]** Because we hold that the INA and the relevant regulation unambiguously require service "to the alien," we need not look to the State Department's interpretation of these materials. To the extent that any ambiguity could be found in the notice requirement, the Department's interpretation of section 203(g) is not entitled to significant deference. No precedential opinion establishes that notification required for termination may be achieved through an I-130 petitioner's attorney. *Cf.* 9 FAM § 42.83 n.6 (2000) ("There have been very few advisory opinion requests on INA 203(g) sent to the Department and, therefore, the Department has little basis for establishing precedence."); *id.* § 42.83 n.6 (2010) (same).

**[6]** This case illustrates the substantial and unnecessary risk that notice sent to the attorney who prepared the I-130 will not reach the beneficiary. A delay of a decade or more often occurs between the filing of an I-130 petition and authorization of an immigrant visa. *See* United States Department of State, *Visa Bulletin*, July 2010 (noting delays for sibling immigrant visas including 21 years for citizens of the Philippines and 15 years for citizens of Mexico). During that time, an attorney may have moved or lost contact with the petitioner, let alone with the beneficiary. Although a visa applicant must maintain a current address with the Department of State, as noted above, no similar rule requires an attorney to maintain a current address on file. An I-130 beneficiary can-

not be faulted for failing to receive notice that never reached a former attorney who changed offices or retired.

**[7]** Therefore, any notice sent by the State Department to Quan concerning Sukhwinder's visa eligibility cannot serve as the prerequisite for termination under INA section 203(g). Because the government did not send notice "to the alien," termination of Sukhwinder Singh's visa registration was contrary to law. The APA requires that the agency action be declared unlawful and set aside.

## C.

The government argues that the State Department acted reasonably by providing notice to Quan because the Singhs continued to rely on Quan for information concerning the I-130 application. This post hoc rationalization is divorced from the question presented: whether termination premised on notice to Singh was contrary to law. Although reasonableness may color our interpretation of a statute, *see, e.g.*, *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) (adopting the "most reasonable interpretation"), it is not the sole inquiry before us. Moreover, there is no evidence that the government was aware in 2000 that Dharam — let alone Sukhwinder — remained in contact with Quan. Even if the government had been aware that Quan sent a letter to Sukhwinder's address in India at Dharam's request, this would not establish an attorney-client or other agency relationship between Quan and Sukhwinder. Although we hope that an attorney acting on behalf of an I-130 petitioner would forward mail addressed to the I-130 beneficiary, the state in which Quan practices has rejected a duty of care toward an intended beneficiary of an attorney's services. *See Barcelo v. Elliott*, 923 S.W.2d 575, 578 (Tex. 1996).

The government separately argues that mailing notification to India in 2000 would not have been reasonably calculated to reach Sukhwinder, who had not lived there for nine years.

Again, this is a post hoc argument, and again reasonableness is not the sole inquiry before us. Nor is there merit to this contention. First, there is no indication that State Department officials responsible for transmitting notice were aware of Sukhwinder's presence in the United States. Second, Sukhwinder's family remains at his former home in India and would have been able to send the visa application to him in the United States. Third, because visa applicants are responsible for maintaining a current address with the State Department, sending notice to Sukhwinder's last known address would have made him plainly responsible for failing to apply after the government properly transmitted notice to his address in India. Although a consular official might determine that notice via local mail is not feasible in a particular country or region, there is no evidence that officials acted on that belief here.

## CONCLUSION

**[8]** We hold that the district court erred by concluding that termination of Sukhwinder Singh's visa registration did not violate the notice requirements of INA section 203(g). We reverse and remand for the district court to set aside the government's decision to terminate Sukhwinder Singh's visa registration.

**REVERSED and REMANDED.**