RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

TONIA WRIGHT, as mother and next friend of
D.W.,

　　　　　　　　　*Plaintiff-Appellant*,

　　　　v.

KATHRYN O'DAY, Commissioner of the
Tennessee Department of Children's
Services; WILLIAM HASLAM, Governor of the
State of Tennessee,

　　　　　　　　　*Defendants-Appellees*.

No. 12-5261

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 2:11-cv-64—Kevin H. Sharp, District Judge.

Decided and Filed: February 8, 2013

Before: GUY and ROGERS, Circuit Judges; HOOD, District Judge.[*]

───────────────

**COUNSEL**

───────────────

**ON BRIEF:** Melanie Stepp Lane, Jamestown, Tennessee, for Appellant. Alexander S. Rieger, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

───────────────

**OPINION**

───────────────

ROGERS, Circuit Judge. The district court in this case dismissed for lack of justiciability the procedural due process challenge to the placement of a thirteen-year-old boy on the Tennessee child-abuse registry. The claim was brought by the boy's mother

───────────────

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

as next friend. Plaintiff has standing to seek additional procedures because those procedures, if granted, could result in relief that is sufficiently concrete and particularized. The classification is complete, the classification will not be expunged from state records, and the classification is not a generalized grievance or an injury to a third party. The claim is also ripe for review because no further factual development is needed to determine if the boy was afforded adequate process. He would otherwise be forced to wait until the state determines that he is not eligible for employment in certain prohibited fields to get an administrative hearing on his classification. The claim should therefore not have been dismissed on justiciability grounds.

D.W., proceeding through his mother Tonia Wright, brought this civil rights action under 42 U.S.C. § 1983. He filed a complaint against the Governor of Tennessee and the Commissioner of the Tennessee Department of Children's Services, alleging that the defendants violated his procedural due process rights by listing him on the state's child abuse registry without providing him with an administrative hearing to challenge the listing. According to the complaint, a Children's Services case manager interviewed both D.W. and Wright, and explained that another child, L.M., alleged that D.W. had pushed L.M.'s penis and stuck his finger in L.M.'s butt. D.W. and his mother denied these allegations during the interview, *id.*, but later were notified that Children's Services had "indicated" D.W. as a perpetrator of child abuse.

D.W. requested a formal file review and submitted written information regarding L.M.'s inconsistent statements, but never was told the evidence against him. Children's Services conducted the review and upheld the classification. D.W. then requested an administrative hearing. Children's Services denied the request on the basis that he did not qualify for a hearing because the classification did not affect his employment. Tennessee regulations provide for a hearing only if Children's Services is about to release D.W.'s information, or if he is denied employment in field affected by the classification. Tenn. Comp. R. & Regs. 0250-07-09-.08(1). D.W. claimed that being listed as a perpetrator of child sexual abuse deprived him of his liberty interest in pursuing the common occupations of life, because Tennessee law prohibited his

employment with child-care agencies, child-care programs, and adult-daycare centers. He further claimed that the listing precluded him from having contact with children during the course of employment with any state agency. D.W. sought injunctive and declaratory relief.

The Commissioner filed a motion to dismiss, asserting that any claim based on the listing's effect on D.W.'s employment did not present a justiciable case or controversy because D.W.'s claim of injury was speculative. The Commissioner also asserted that D.W. was not deprived of a liberty interest because reputation damage alone is insufficient to state a claim under the Due Process Clause. The district court granted the motion, finding that D.W. did not present a justiciable case or controversy because the alleged deprivation was "anchored in future events and the possibility of future harm." *D.W. ex rel. Wright v. O'Day*, No. 2:11:0064, 2012 WL 315401, at *4, (M.D. Tenn. Feb. 1, 2012). The court did not reach the substantive issue of whether D.W. had been deprived of a liberty interest under the Due Process Clause. *Id.* at *2. The court dismissed D.W.'s claim, and D.W. appeals.

If D.W. is successful in his due process claim, he will be entitled to procedural protections that he otherwise could not get. This is enough for Article III standing as long as the procedures sought would lead to a concrete, particularized, and actual benefit. D.W. has demonstrated Article III standing on both steps of this procedural-standing analysis.

First, it is clear from Supreme Court cases that a litigant can suffer an injury-in-fact from the denial of procedural protections even if, when applied, the procedures might not result in relief. For instance, in the Supreme Court's seminal procedural due process case regarding welfare recipients, the Court required a hearing prior to termination of welfare benefits, notwithstanding the availability of arguments that the particular plaintiffs would still be denied benefits if the hearing were granted. *See Goldberg v. Kelly*, 397 U.S. 254, 256 n.2, 264-65 (1970). The Supreme Court has explained that "'procedural rights' are special" in that

[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992).

But as the Court held in *Lujan*, there is a limit to Article III standing when invoked to protect "procedural rights." Apart from some situations not applicable here, the procedural requirement sought must be one "the disregard of which could impair a separate concrete interest of [the plaintiffs] (*e.g.*, the procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them)." *Lujan*, 504 U.S. at 572. Without such a limit, a busybody litigant personally unaffected by an illegal action could circumvent the Article III limitation by challenging the government's refusal to give the busybody a hearing.

This case does not fall outside the bounds of "procedural rights" standing because the interest that D.W. wants procedures to protect—his freedom from being classified as a child abuser—*is* sufficiently imminent and concrete. D.W. suffered an injury when Children's Services classified him as a child abuser. "When the plaintiff is an object of the challenged action 'there is ordinarily little question that the action or inaction has caused him injury.'" *Thomas More Law Ctr. v. Obama,* 651 F.3d 529, 537 (6th Cir. 2011), (quoting *Lujan*, 504 U.S. at 561-62). It is clear that D.W. is the object of the challenged action—Children's Services placed D.W. on the abuse registry, and D.W. challenges that action.

The harm from being listed on the child-abuse registry now is not lessened by the regulation cited by the State and the district court that prevents Children's Services from releasing D.W.'s registry information after a two-year period. *See D.W. ex rel. Wright*,

2012 WL 315401, at *4.  The regulation states that "this provision shall not . . . require expunction of this information from the Department's internal records."  Tenn. Comp. R. & Regs. 0250-07-09-.03(5).  Therefore, even if Children's Services does not release information about D.W. after two years, the record is not expunged.  Since D.W.'s record as a child abuser may never be removed by the state, D.W. has suffered a concrete injury because the classification as a child abuser is, in effect, permanent.

D.W.'s injury-in-fact is distinct from the generalized grievance asserted in *Lujan*. In *Lujan*, the Supreme Court held that the plaintiffs did not have an injury-in-fact because they merely alleged that they planned to visit other countries where wildlife would be affected negatively by the proposed governmental regulations.  504 U.S. at 562-63.  The Court found that the underlying statute was too broad in empowering *any* citizen to bring a civil suit to enjoin the regulations.  *Id.* at 571-72.

By contrast, D.W. is seeking to enforce a procedural requirement that if disregarded would impair his concrete interests.  D.W. is asserting a procedural right that he claims should be afforded to him under Tennessee law, similar to the procedural due process rights afforded to welfare recipients in *Goldberg v. Kelly*, 397 U.S. 254 (1970).

Although the State argues that there is no clear injury until D.W. applies to work in an affected field and is excluded, this argument implies that D.W. would be forced to wait many years in order to challenge his classification.  In *Cutshall v. Sundquist*, we held that a sex offender had established an injury in fact sufficient to challenge a statute requiring his listing on a sex offender registry.  193 F.3d 466, 472 (6th Cir. 1999).  We held that the offender faced a specific threat every day because law enforcement officials could release his registry information at any time.  *Id.*  The State argued that there was no clear injury until the offender's registry information was about to be released.  We rejected the state's argument, because it would require the offender to wait until his registry information had been released in order to challenge the statute.  *Id.*

Similarly, D.W. would have to wait until his information in the registry was used to make a determination about his employment status, or until the information was about to be released, in order to challenge his classification.  Under Tennessee rules, D.W. can

only get access to an administrative hearing if Children's Services plans to release D.W.'s registry information or if the indication affects his employment or professional license. *See* Tenn. Comp. R. & Regs. 0250-07-09-.08(1). Like the offender in *Cutshall*, D.W. would have to wait to challenge his listing on the abuse registry until the information was about to be released or until it affected his employment. Therefore, like the offender in *Cutshall*, D.W. should not have to wait to challenge his classification, and has established a sufficiently concrete injury to support standing.

D.W.'s injury is actual because he has already been classified as a child abuser by Children's Services. The district court accepted the State's argument that no injury existed because the laws could change or because D.W. might not be interested in pursuing an occupation in child care or adult care. *D.W. ex rel. Wright*, 2012 WL 315401, at *4. However, highly speculative claims as to what might happen in the future are irrelevant to a determination of whether D.W. has alleged actual or imminent harm. In *Thomas More*, the plaintiffs objected to the insurance mandate under the Patient Protection and Affordable Care Act. 651 F.3d at 533. We rejected the defendants' arguments that the plaintiffs did not have standing to bring the claim because it was possible that the plaintiffs could leave the country or die before the mandate to purchase insurance became effective. *Id.* at 537. We defined these arguments as "hardly probable" and "not the kinds of future developments that enter into the imminence inquiry." *Id*. The State's arguments in this case are likewise "hardly probable" and "not the kinds of future developments" that apply to standing.

D.W.'s future interest in pursuing certain types of employment is unknown and uncertain, but this uncertainty does not keep D.W. from being affected now by being listed as a child abuser. D.W. has been classified as a perpetrator of child abuse, injuring him now in a concrete, particularized, and actual way. He therefore has standing to challenge the adequacy of procedures by which he can defend against or challenge the classification.

D.W.'s claim is also ripe for judicial review. The relevant facts are fit for judicial resolution, the determination not to give process now is sufficiently final, and

without adequate process now, D.W. will be unable to challenge his classification in the future. To determine ripeness, we consider (1) whether the court would benefit from a "concrete factual context"; (2) whether the agency may modify its legal position or refine its policies, rendering a judicial decision premature; and (3) the hardship to the plaintiffs in waiting for enforcement. *See Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003).

First, the factual issues in this case are sufficiently developed to allow the courts to adjudicate this matter fairly. The courts are certainly capable of reviewing D.W.'s classification and determining whether D.W. should be afforded an administrative hearing now, rather than in the future. Regardless of whether D.W. wishes to pursue future employment in the affected fields, the issue before the court is whether D.W. was afforded sufficient process in being classified as a child abuser by Children's Services. The issue is a legal one, and applying due process law to determine whether a hearing is required now will not be better informed by the vagaries of whether D.W. actually seeks certain jobs later in life. No future facts are needed that would require the court to wait before determining whether D.W. received sufficient process.

Second, Children's Services has indicated that its decision is final by reaffirming that position after a written petition from D.W., and by denying D.W. an administrative hearing. No further review of D.W.'s classification will occur until D.W. is denied employment in an affected field, an event which cannot happen for several years. While "[c]ourts should avoid pre-enforcement challenges that do not permit enforcement agencies to refine their policies," *Ammex*, 351 F.3d at 708, Children's Services is unlikely to change its decision or revise its regulations to grant D.W. an administrative hearing now. In the Supreme Court's seminal case on ripeness, the Court held that a pre-enforcement challenge to a final agency regulation was permissible because the agency's position was unlikely to change. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1967). There is no reason to believe that Children's Services will change its position, and, given that Children's Services has indicated its decision is final, no need to delay the court's review of the process given to D.W.

D.W. will also suffer considerable hardship if he is denied judicial relief at this stage of the proceedings because he will be unable to challenge the factual basis for his classification in the future. If the court holds that there is no justiciable case or controversy now, forcing D.W. to wait until he is excluded by Children's Services, Tennessee procedures prevent him from ever challenging the factual basis for his exclusion. Under Tennessee law, a person who is appealing an exclusion or denial of a license based on a criminal background check "may not collaterally attack the factual basis of an underlying exclusionary record except to show that the appellant is not the person identified on the record." Tenn. Code Ann. § 71-3-507(e)(4). Therefore, D.W. could only challenge Children's Services' *determination* of his eligibility to work in particular fields. He would not be able to attack his initial classification or be provided with a hearing on whether he should have been classified as an abuser in the first place.

Therefore, the record is sufficiently developed to allow the courts to determine if D.W. is entitled to a hearing, Children's Services has indicated that its decision is final and unlikely to change, and D.W. will suffer considerable hardship if he is forced to wait years to get a hearing.

In conclusion, the dismissal of this case cannot stand on the justiciability grounds relied upon by the district court. Remand is therefore warranted so that the district court may in the first instance address the merits of plaintiff's claim, including the question of whether D.W. has asserted a protected liberty interest under the "stigma-plus" test of *Paul v. Davis*, 424 U.S. 693, 701 (1976). The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.