**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0388n.06

**No. 18-1819**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LOABAT AMIRI; MOHAMED AMIN LATIF; )
FARBOD LATIF, )
                                                  )
       Plaintiffs-Appellants, )
                                                  )
v. )
                                                  )
SECRETARY, DEPARTMENT OF HOMELAND )
SECURITY; U.S. DEPARTMENT OF STATE; )
UNIDENTIFIED CBP AGENTS; U.S. CUSTOMS )
AND BORDER PROTECTION; FBI; NATIONAL )
SECURITY AGENCY; NATIONAL COUNTER )
TERRORISM CENTER; OFFICE OF THE )
DIRECTOR OF NATIONAL INTELLIGENCE; )
TERRORISM SCREENING CENTER; FBI )
UNIDENTIFIED AGENTS; TSC UNIDENTIFIED )
AGENTS, )
                                                  )
       Defendants-Appellees. )

**FILED**
Jul 02, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

**BEFORE:**    **ROGERS, STRANCH, and THAPAR, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** At issue in this case is a challenge to a foreign-national's visa denial. Dr. Loabat Amiri, Mohamed Amin Latif (Latif), Farbod Latif—wife, husband, and son, respectively—filed a 10-count complaint alleging that Latif's visa denial and placement on a terrorist watchlist violates the Constitution, the Immigration and Nationality Act of 1965 (INA), and the Administrative Procedure Act (APA). The district court dismissed the plaintiffs' claims over the course of two opinions. On appeal the plaintiffs raise only their direct

challenge to the visa denial. Because review of Latif's visa denial under the circumstances presented and the theories maintained on appeal is precluded by the doctrine of consular non-reviewability, we **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

Amiri is an endocrinologist living in Midland, Michigan. During these proceedings, Amiri was a permanent resident in the United States, a citizen of the United Kingdom, and a national of Iran; on August 6, 2019, she notified the court that she is now a United States citizen. Her husband, Latif, is a citizen and national of the United Kingdom, where he lives. Their son, Farbod Latif, is a student, a United States citizen by birth, and—like his mother—a resident of Midland, Michigan.

Amiri entered the United States on an H-1B visa in 2006 to begin a medical residency at Metro Health Medical Center in Cleveland, Ohio. Latif was able to join her under the H-4 visa program. In the following years, Amiri and Latif were both granted visa extensions by the Department of Homeland Security (DHS).

In 2010, Amiri and Latif traveled to Ottawa, Canada to renew their H visas and maintain lawful status in the United States. Following two weeks of administrative processing without an answer from the Consulate, they both reentered the United States: Latif used his British passport and Amiri was paroled into the United States. Latif's stay on his British passport eventually elapsed and he too was granted parole to remain in the country with his minor children. On November 30, 2010, Latif applied to renew his parole but this time he was denied and was instead issued an expedited removal order. The plaintiffs allege that a TECS[1] record had been created for both Amiri and Latif on November 25, 2010. The expedited removal order was executed on

---

[1] TECS (not an acronym) is the main database used by U.S. Customs and Border Protection to determine the admissibility of individuals arriving at the border.

December 20, 2010, and Latif was deported to Great Britain.[2] He has been unable to return to the United States since.

In London, Latif filed a derivative application for permanent residency and interviewed at the United States Embassy in London, where officials informed him that his case required administrative processing. Latif ultimately received a letter stating that Section 212(a)(3)(B) of the INA rendered him ineligible to receive an immigrant visa. His subsequent efforts to receive further information and reconsideration have been to no avail.

Amiri, Latif, and Farbod Latif filed suit in federal district court raising claims under several theories. The district court dismissed the complaint. The plaintiffs appeal only Latif's visa denial.

### B. Statutory Background

The INA, codified at 8 U.S.C. § 1101 *et seq.*, governs the provision of visas. As a general matter, a person without status in the United States cannot enter and permanently live in the United States without a visa. *Id.* § 1181(a). A special visa process applies to persons abroad who are sponsored by immediate relatives in the United States. *Id.* §§ 1151(b), 1153(a). The sponsored relative must submit certain documents and interview with a consular officer at an embassy or consular office abroad before a visa can be issued. *Id.* §§ 1201(a)(1), 1202. When reviewing a visa application, consular officers are required to check whether the applicant may be considered inadmissible under any provision of the INA. *Id.* § 1361. As relevant here, § 1182 (which implements § 212(a)(3)(B) of the INA) proscribes issuing visas to applicants with a connection to terrorist activities or terrorist organizations. *Id.* § 1182(a)(3)(B)(i). Here, it is alleged that a TECS

---

[2] The plaintiffs do not challenge Latif's deportation from the United States.

or Terrorism Screening Database (TSDB) entry contributed to the consular officer's § 1182(a)(3)(B) citation and Latif's denial.[3]

## II.    ANALYSIS

The issues in dispute have been narrowed on appeal.  In its first opinion, the district court dismissed all aspects of the amended complaint that challenged Latif's inadmissibility determination and visa denial pursuant to the doctrine of consular non-reviewability.  In a second opinion, the court then dismissed the plaintiffs' claims regarding placement on the terrorist watchlist for failure to state a claim under Rule 12(b)(6), for lack of standing, or for failure to exhaust administrative remedies.  The plaintiffs' claims on appeal focus only on Latif's visa denial and both Latif and Amiri's ability to travel in light of the alleged database listings.  In their Reply brief, however, plaintiffs abandoned the contention that defendants infringed on Amiri's right to

---

[3] As part of the visa application review process, consular officers run an applicant's information through a variety of terrorist watch lists.  The most centralized database is the Terrorist Screening Database (TSDB), which is managed by the Terrorism Screening Center and administered by the FBI.  CONG. RES. SERV. REP., THE TERRORIST SCREENING DATABASE AND PREVENTING TERRORIST TRAVEL, https://fas.org/sgp/crs/terror/R44678.pdf (last visited May 6, 2020).  It includes biographic and biometric information about individuals who have, or are suspected to have, ties to terrorism.  *Id.*  Its data are unclassified.  *Id.*  The Terrorist Identities Datamart Environment (TIDE) is a classified database that contains all of the U.S. Government's information on persons suspected to have a connection to terrorism. CONG RES. SERV. REP, TERRORIST DATABASES AND THE NO FLY LIST: PROCEDURAL DUE PROCESS AND HURDLES TO LITIGATION at 2, https://fas.org/sgp/crs/homesec/R43730.pdf (last visited May 6, 2020). TIDE supplies the TSDB with identity information.  The TSDB, meanwhile, pushes identity information downstream to additional databases administered by various government agencies and departments depending on their needs and legal authority.  *Id.* at 3.  TECS, for example, the database used by U.S. Customs and Border Patrol for background checks and traveler screening at ports of entry, and on which a record for Amiri and Latif was found in 2010, imports certain data from the TSDB.  *Id.* at 2.  DHS screens U.S.-based petitioners and foreign beneficiaries of spousal visas through the TECS database.  UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE, NONIMMIGRANT VISAS: OUTCOMES OF APPLICATIONS AND CHANGES IN RESPONSE TO 2017 EXECUTIVE ACTIONS ("GAO Nonimmigrant Visa Report") at 11 https://www.gao.gov/assets/700/693763.pdf (last visited May 6, 2020).

travel. At oral argument, plaintiffs also abandoned their theories of redress predicated on Latif's right to travel. The only issue remaining is a challenge to Latif's visa denial.[4]

### A. Standard of Review

When a complaint is dismissed in the district court as a matter of law, de novo review applies. *Beydoun v. Sessions*, 871 F.3d 459, 464 (6th Cir. 2017). We construe the complaint in the light most favorable to the plaintiffs, accept all well-pleaded factual allegations as true, and examine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B. Discussion

The doctrine of consular non-reviewability stems from Congress's plenary power over immigration, its authority to set the terms upon which a person without status in the United States may procure a visa and enter the country, and its attendant prerogative to delegate the power to welcome, exclude, or expel individuals without lawful status to the executive branch. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977). "For more than a century, this Court has recognized that the

---

[4] Plaintiffs' procedural due process claims that are still before us on this appeal meet Article III standing requirements. The heart of plaintiffs' procedural due process claim on appeal is their argument that they are entitled to information related to the denial of Latif's visa application. The claim clearly presents a redressable procedural claim because, first, plaintiffs will, if successful, obtain relief in the form of a procedure and, second, the procedure affects a sufficiently concrete interest of the plaintiffs. As the Supreme Court explained in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992), a person who asserts a "procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." An individual can enforce procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan*, 504 U.S. at 573 n.8. Such a concrete ultimate interest is present in Latif's visa here, although it was absent in *Lujan*. *See Lujan*, 504 U.S. at 572 n.7. Further, the presence of Article III standing is directly supported by our holding and reasoning in *Wright v. O'Day*, 706 F.3d 769, 771–72 (6th Cir. 2013), in which we held specifically that "a litigant can suffer an injury-in-fact from the denial of procedural protections even if, when applied, the procedures might not result in relief." Of course, that plaintiffs have standing does not mean that they are entitled to the procedure that they seek, but only that their procedural claim presents a case or controversy that a federal court may resolve.

admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) (quoting *Fiallo*, 430 U.S. at 792). These principles undergird the consular non-reviewability doctrine: There is typically no judicial review available to challenge visa-eligibility decisions made by consular officers abroad. *See Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017).

But there is an exception. As laid out in *Kleindienst v. Mandel*, judicial review of a visa decision made by consular officers abroad is available if that determination implicates the constitutional rights of persons in the United States.[5] 408 U.S. 753, 762–65 (1972). That review is limited; it ends where the Government presents a facially legitimate and bona fide reason for the denial. *Mandel* held that "when the Executive exercises [its delegated authority to deny a visa to an applicant abroad,] on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests of individuals in the United States who seek, or would benefit from, the applicant's admission. *Id.* at 770.

In *Kerry v. Din*, 135 S. Ct. 2128 (2015), a U.S. citizen challenged a consular official's decision to deny her husband a visa based on the same "terrorist activities" provision of the INA that is at issue here. *Id.* at 2139 (Kennedy, J., concurring). No opinion at the Supreme Court commanded a majority. But the parties agree that because Justice Kennedy's concurrence decided the case on substantially narrower grounds than the plurality, its rationale is considered the holding of the court. *See Marks v. United States*, 430 U.S. 188, 193 (1977); *see also Cardenas v. United*

---

[5] Amiri and Farbod Latif are both U.S. citizens. The appellees do not argue that Amiri was entitled to fewer constitutional protections when she was a lawful permanent resident.

*States*, 826 F.3d 1164, 1171 (9th Cir. 2016). In *Hawaii*, 138 S. Ct. at 2419, the Supreme Court majority subsequently relied on the rationale in Justice Kennedy's concurring opinion in *Din*.

Justice Kennedy reasoned that assuming Din invoked a protected liberty interest in her husband's visa application, the consular officer's citation of § 1182(a)(3)(B) was sufficient to provide both a facially legitimate and bona fide reason for the denial. *Din*, 135 S. Ct. at 2139 (Kennedy, J., concurring). Applying *Mandel*, Justice Kennedy concluded that the provisions of § 1182(a)(3)(B) "establish specific criteria for determining terrorism-related inadmissibility" and the "consular officer's citation of that provision suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements," such that the visa denial was facially legitimate. *Id.* at 2140. By the same token, because § 1182(a)(3)(B) lays out "discrete factual predicates the consular officer must find to exist before denying a visa," there must have been a bona fide factual basis to deny the visa. *Id.* at 2140–41.

*Din* also interpreted *Mandel* to provide that where a plaintiff cannot show bad faith on the part of the visa decisionmaker, the doctrine of consular non-reviewability bars judicial review, regardless of the facially legitimate and bona fide basis for the denial under § 1182(a)(3)(B). *Id.* at 2141. Justice Kennedy reasoned: "[a]bsent an affirmative showing of bad faith on the part of the consular officer who denied Berashk [Din's husband] a visa . . . *Mandel* instructs us not to 'look behind' the Government's exclusion of Berashk for additional factual details beyond what its express reliance on § 1182(a)(3)(B) encompassed." *Id.* (quoting *Mandel*, 408 U.S. at 770). Absent sufficient allegations of bad faith, therefore, a visa denial is not reviewable in federal court.

In this case, the district court concluded that the consular officer's citation of § 212(a)(3)(B) was a facially legitimate and bona fide reason to deny Latif's visa. Without a particularized

allegation of bad faith, the district court reasoned, it was not empowered to look beyond the consular officer's stated reason for the denial.

The plaintiffs first contend that the doctrine of consular non-reviewability does not apply to their case because, once a terrorism database listing appears, the discretionary decision to grant or deny the visa moves from the consular officer to DHS. And because DHS's actions are reviewable under the APA, they can challenge the visa denial under 5 U.S.C. § 706(2). The Government maintains that while the APA may provide a cause of action to review some agency actions, the doctrine of consular non-reviewability removes a visa denial challenge from the purview of routine judicial review over agency actions. *See* 5 U.S.C. § 702. The doctrine's application, the Government asserts, does not turn on the identity of the agency that makes the ultimate visa decision; it applies where the executive branch exercises discretion to deny a visa.

Courts to address the issue have reasoned that the APA does not provide an end-run around the consular non-reviewability doctrine. While Congress could authorize a cause of action for plaintiffs to broadly challenge visa denials in federal court—courts do not permit such a challenge where the plaintiff does not first meet the requirements of *Mandel* and *Din*. *See Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60 (D.C. Cir. 1999). This result appears to accord with the doctrine's genesis. In *Mandel*, the Court reasoned: "when the *Executive* exercises" its power to exclude "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification" with the constitutional rights of those in the United States. 408 U.S. at 770 (emphasis added). In *Hawaii*, the Court reiterated that the doctrine applies to the executive branch. "We limit[] our review to whether the Executive gave a 'facially legitimate and bona fide' reason for its action." 138 S. Ct. at 2419. The plaintiffs' argument that the doctrine of

consular non-reviewability does not apply where the discretionary decision is made by DHS is contradicted by *Mandel, Din,* and *Hawaii*; and the plaintiffs do not offer a rationale for why the resolution of their case is not dictated by this precedent.[6]

In the alternative, the plaintiffs argue that even if the doctrine of consular non-reviewability applies, their case is distinguishable from *Din* because Din's husband had been affiliated with the Taliban such that, unlike here, the plaintiffs had at least some inclination as to why the visa was denied. *See Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring). They cite consular non-reviewability cases where circuit courts have purportedly considered the underlying facts behind a visa denial to assess whether the Government has provided "a facially legitimate and bona fide reason." *Mandel*, 408 U.S. at 770. *See Yafai v. Pompeo*, 924 F.3d 969, 970 (7th Cir. 2019) (Barrett, J., concurring in the denial of rehearing en banc) (smuggling children); *Allen*, 896 F.3d at 1109 (criminal history); *Morfin v. Tillerson*, 851 F.3d 710, 713 (7th Cir. 2017) (cocaine distribution); *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017) (rock throwing); *Cardenas*, 826 F.3d at 1172 (gang-activity). Indeed, there is some support for the proposition that there must be facts in the record to substantiate the "facially legitimate and bona fide reason" offered by the executive branch. *See, e.g., Hazama*, 851 F.3d at 709 ("[W]e . . . look at the face of the decision, see if the officer cited a proper ground under the statute, and ensure that no other applicable constitutional limitations are violated. Once that is done, if the undisputed record includes facts that would support that ground, our task is over."). But the Seventh Circuit has also indicated

---

[6] Moreover, the visa denial in *Din* was predicated on the very same statutory citation as Latif's denial; and there is no allegation here that the distribution of discretion within the executive branch has changed since *Din*. *Din* squarely applied the doctrine long after authority over the visa process was vested in DHS. *See* 6 U.S.C. § 236(b)(1); *Din*, 135 S. Ct. at 2140 (Kennedy, J., concurring). Plaintiffs do not argue on appeal that a database listing automated Latif's visa denial, that the decision was made without the exercise of human discretion, nor that the executive-branch decisionmaker was precluded by a database entry from weighing other factors or ultimately deciding to grant Latif a visa.

otherwise, reasoning: "[w]hen a statute 'specifies discrete factual predicates that the consular officer must find to exist before denying a visa,' the citation of the statutory predicates is itself sufficient. . . . [T]he consular officer need not disclose the underlying facts that led him to conclude that the statute was satisfied." *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019) (quoting *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring)).

In any event, *Din* indicates that a citation of § 1182(a)(3)(B) is enough, at least where the executive-branch decisionmaker has reason to believe the applicant is engaged in terrorist activity. "[T]he Government satisfied any obligation it might have had to provide Din with a facially legitimate and bona fide reason for its action when it provided notice that her husband was denied admission to the country under § 1182(a)(3)(B)." *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring). A citation of § 1182(a)(3)(B) is a sufficient justification for a visa denial because it implies the necessary factual predicates were met. *Id.* at 2140–41. *See Cardenas*, 826 F.3d at 1172 (A bona fide reason under *Din* is established where the consular officer "cite[s] an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' *or* there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." (emphasis added) (quoting *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring))).

The doctrine of consular non-reviewability applies here, and the plaintiffs have put forth no pathway around the rule that a citation of § 1182(a)(3)(B) is a facially legitimate and bona fide reason for the Government's action. To proceed on a bad faith theory, the plaintiffs must adequately allege bad faith on the part of an executive branch decisionmaker who exercised discretion in denying Latif's visa. They have not done so. The plaintiffs argue that they cannot because they are caught in a catch-22: without knowing the reasons for the denial, they are unable

to investigate the possibility of a bad faith decision. But the plaintiffs conceded at argument that the visa denial remains a discretionary decision even in light of a terrorism citation. Because a citation of § 1182(a)(3)(B) is all that is required, absent bad faith, to insulate the visa decision under the doctrine of consular non-reviewability, plaintiffs' claims on appeal cannot survive the motion to dismiss.

## III.    CONCLUSION

For the foregoing reasons, we **AFFIRM**.